Mary Jo O'Neill, AZ Bar No. 005924
Laurie Jaeckel, CO Bar No. 41447
Paula C. Salazar, CA Bar No. 327349
**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Phoenix District Office**
3300 N. Central Ave., Suite 690
Phoenix, Arizona 85012
Telephone: (602) 661-0067
Fax: (602) 640-5009
Email: mary.oneill@eeoc.gov
lauren.jaeckel@eeoc.gov
paula.salazar@eeoc.gov

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

**TUCSON DIVISION**

| | |
|---|---|
| Equal Employment Opportunity Commission,<br>Plaintiff,<br>v.<br>Learjet Inc., dba Bombardier<br>Defendant. | Civil Action No.:<br>**COMPLAINT**<br>(JURY TRIAL DEMANDED) |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA") and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Charging Party Steven Stump and a class of aggrieved individuals who were harmed by such practices. As alleged with greater particularity below, the Equal Employment Opportunity

Commission ("EEOC") alleges Learjet Inc. d/b/a Bombardier ("Bombardier" or "Defendant") utilized post-offer, pre-employment screening that screens out or tends to screen out individuals with disabilities and/or has the effect of discrimination on the basis of disability. The EEOC further alleges that Bombardier failed to hire Steven Stump and other aggrieved individuals based on disability and failed to provide reasonable accommodations to Stump and other aggrieved individuals in violation of the ADA.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the District of Arizona.

## PARTIES

3. Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1), (3).

4. At all relevant times, Defendant Bombardier, a Kansas corporation, has continuously been doing business in the State of Arizona and the City of Tucson and has continuously had at least 15 employees.

5. At all relevant times, Bombardier has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the

ADA, 42 U.S.C. §§ 12111(5), (7).

6. At all relevant times, Bombardier has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

**ADMINISTRATIVE PROCEDURES**

7. More than thirty days prior to the institution of this lawsuit, Steven Stump filed a charge with the EEOC alleging violations of the ADA by Bombardier.

8. Stump filed his charge of discrimination with the EEOC on October 29, 2020.

9. The EEOC provided Bombardier with notice of the charge of discrimination.

10. The EEOC investigated the charge of discrimination.

11. On January 7, 2026, the EEOC issued a Letter of Determination to Bombardier.

12. In the Letter of Determination, the EEOC found reasonable cause to believe that Bombardier engaged in unlawful employment practices in violation of the ADA.

13. In the Letter of Determination, the EEOC invited Bombardier to join with the EEOC in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

14. Bombardier agreed to participate with the EEOC in this informal conciliation process.

15. The EEOC and Bombardier were unable to reach an agreement through the conciliation process.

16. On May 14, 2026, the EEOC issued a Notice of Failure of Conciliation to Bombardier.

17. All conditions precedent to the institution of this lawsuit have been fulfilled.

**GENERAL ALLEGATIONS**

**A. Defendant Bombardier**

18. Bombardier is an international aviation company that designs, builds, and maintains aircraft.

19. Bombardier has approximately 18,000 employees worldwide.

20. Bombardier operates a facility in Tucson, Arizona, where it services and maintains business aircraft.

21. Bombardier contracts with staffing agency HSGI Inc. to recruit and hire applicants for employment.

22. In this contractual relationship, HSGI serves as Bombardier's agent for purposes of recruiting and hiring applicants for employment.

23. Bombardier requires applicants who receive a conditional job offer to pass a post-offer, pre-employment screen before they begin work.

24. Bombardier contracts with an outside vendor, WorkWell, to administer the post-offer screens.

25. In this contractual relationship, Bombardier authorizes WorkWell to conduct the post-offer screens on applicants for employment with Bombardier.

26. In this contractual relationship, WorkWell serves as Bombardier's agent for purposes of conducting the post-offer screens.

27. Concentra is a provider in the WorkWell network and administers the post-offer screens for WorkWell.

28. Bombardier's and Workwell's post-offer screen included the following components: 1) medical history questionnaires, (2) physical examinations, (3) physical testing, and (4) "Medical Classifications" with work restrictions.

29. The medical history questionnaire included over 100 questions on the applicant's past and present medical conditions, occupational history, and occupational injuries or illnesses.

30. The physical examination included information on the applicant's vitals,

urinalysis, a physical exam of body systems, and a section for medical history and physical comments.

31. The physical testing includes an audiogram, multiple physical abilities tests (including lifting tests, force generation tests, and tests on steps and stairs), and a Pulmonary Function Test ("PFT").

32. The PFT measures the lung volume and airflow of the applicant to purportedly determine if the applicant is medically able to use a respirator.

33. The PFT has two portions: the FVC (Forced Vital Capacity) evaluation and the FEV1 (Forced Expiratory Volume in One Second) evaluation.

34. The examiner administering the PFT interprets the results of the PFT to diagnose applicants with either "Normal Spirometry" or "Abnormal Spirometry."

35. Abnormal Spirometry means a person's lungs are not moving air out as fast or as fully as expected for someone of their age, height, and biological sex.

36. An applicant also fills out Respiratory Medical Evaluation Questionnaire that included over 30 additional questions on the applicant's past and present medical conditions, occupational history, and occupational duties.

37. In addition, Bombardier requires the examiner to provide Bombardier with a "Medical Classification" of the applicant, which includes a checklist for the examiner to complete with the applicant's work restrictions or a checkbox to affirmatively state the applicant has no work restrictions.

38. Job applicants are required to fill out an authorization authorizing that their health information and test results be disclosed to Bombardier.

39. Bombardier requires all conditional job applicants to undergo the same post-offer screen, including the PFT, regardless of the essential functions of the particular position.

40. Bombardier treats the post-offer screen as a pass/fail screen: applicants who pass are hired and applicants who fail are not hired.

41. If an applicant does not pass the PFT, which is interpreted by the examiner

as having Abnormal Spirometry, the applicant is not hired by Bombardier.

42. Although Bombardier allows PFT retesting, it does not allow for any alternate testing, and an applicant who does not pass the PFT is not hired by Bombardier.

43. At all relevant times, Bombardier withdrew its conditional job offers and did not hire applicants who did not successfully pass the PFT.

44. Bombardier and WorkWell did not conduct validation studies for the PFT.

45. The PFT is not a valid or job-related qualification for positions in which Bombardier applies it.

46. OSHA only requires spirometry testing if an employee is required to use a respirator for protection from actual respiratory hazards.

47. Positions for which Bombardier requires a PFT to be conducted do not expose employees to respiratory hazards requiring respirator use.

48. The PFT is not consistent with business necessity because it does not relate to the performance of the job's essential functions.

49. Bombardier also did not and does not conduct an individualized assessment of whether an applicant who does not pass the PFT can perform the essential functions of the position with or without reasonable accommodation.

50. Bombardier does not maintain an adequate process for applicants to request reasonable accommodations in connection with the PFT and does not engage in an interactive process with applicants who do not pass the PFT because of a disability.

51. Bombardier did not offer reasonable accommodations to applicants beyond a retake of the PFT.

52. Bombardier instead treats the PFT result as determinative, without considering reasonable alternatives.

53. Bombardier did not evaluate whether another type of respirator could be used, including a powered air-purifying respirator ("PAPR"), and did not offer alternative respirators or other means of performing the job.

54. Under OSHA's Respiratory Protection Standard, if a medical evaluation indicates an individual cannot safely use a tight-fitting negative pressure respirator, the employer shall provide a PAPR rather than exclude the individual from work.

55. OSHA requires respirator selection based on specific "respiratory hazard(s)"' and "workplace and user factors,'" and rejects one size fits all testing unrelated to identified hazards.

56. Bombardier conducted no hazard analysis demonstrating any respiratory hazards requiring the use of a respirator.

57. Rather than determine whether applicants could safely perform the job without the particular respirator Bombardier had selected, with another respirator, or through another available means, Bombardier treated the inability to obtain medical clearance for its selected respirator as disqualifying from employment.

58. Bombardier therefore uses the PFT as an exclusionary qualification standard rather than a safety driven assessment.

**B. Charging Party Steven Stump**

59. Steven Stump is a licensed A&P Mechanic who, at the time of his 2019 application to Bombardier, had over 15 years of A&P mechanical experience.

60. Stump has worked for at least 8 different competitor aeronautics companies as an A&P Mechanic since the start of his career.

61. In 2017, Stump worked at Bombardier as an A&P Mechanic, also known as a Tech A&P, at Bombardier's Tucson, Arizona location.

62. Stump worked there for two months before being laid off by Bombardier due to lack of work.

63. According to staffing agency HSGI President David Hendrick, Stump is a "top-notch A&P Mechanic."

64. Around November 2019, staffing agency HSGI reached out to Stump with a Tech A&P job opening at Bombardier and Stump applied through HSGI.

65. On or before November 25, 2019, Bombardier extended Charging Party

Steven Stump a conditional job offer as an A&P Mechanic through its agent, HSGI.

66. The "HSGI, Inc. Employee Contractor Agreement" dated November 25, 2019, that Stump signed specified Stump's job placement site as the Bombardier Aircraft Service Center in Tucson, Arizona.

67. The conditional job offer extended to Stump reflected Bombardier's conclusion that Stump was qualified for the Tech A&P position, also known as an A&P Mechanic.

68. Stump was qualified for the Tech A&P position.

69. As a result of the written job offer dated November 25, 2019, Stump and his wife moved from Ottawa, Illinois to Tucson, Arizona.

70. The employment contract specified Stump's job placement site as the Bombardier Aircraft Service Center in Tucson, Arizona, and his Employee Contractor Agreement included "Travel Compensation To & From" and "Housing Allowance (Covered)" under the section detailing Stump's payment rate.

71. Stump incurred travel costs while moving to Tucson from Illinois and reserved housing accommodations to be ready upon his arrival to Tucson.

72. As a prerequisite to employment, Bombardier required Stump to undergo its post-offer screen.

73. Stump was born with Pectus Excavatum (curved sternum), a condition that resulted in an under-developed lung and inadequate room in his chest for his heart and lungs.

74. Stump's physical impairment substantially limited one or more of his major life activities, including at a minimum the major life activity of breathing and the operation of his major bodily functions of respiration and circulation.

75. On or about November 25, 2019, Stump underwent Bombardier's post-offer screen, including an audiology exam, a medical history questionnaire, a physical examination, a PFT, and physical abilities testing.

76. Stump was required to sign an authorization authorizing that his health

information and test results be disclosed to Bombardier.

77. The "Basic Physical Form" completed by the medical examiner during Stump's physical examination noted that Stump had a well-healed scar on his chest from "pectus excavatum."

78. Stump passed all the physical abilities testing in the post-offer screen, which included testing that required Stump to lift 50 pounds from floor to waist and back, lift 25 pounds from waist level to crown level and back, generate 50 pounds of static horizontal push force and pull force, raise hands to crown height and maintain for 3 minutes, sit on floor and bend forward for 3 minutes while performing hand activity on floor, stand and bend forward to 30 degrees of trunk flexion for 3 minutes while performing hand activity, maintain a kneeling, half-kneeling, or crouching position for 3 minutes, ascend and descend 10-inch steps six times while carrying 30 pounds in one hand, and ascend and descend three steps on a stepladder for three repetitions.

79. Stump also passed the audiogram portion of the physical testing.

80. Stump passed all the physical testing in the post-offer screen except the PFT.

81. Stump did not pass either the FVC (Forced Vital Capacity) or FEV1 (Forced Expiratory Volume in One Second) portions of the PFT.

82. Stump's medical examiner interpreted Stump's results from the PFT as reflecting "Abnormal Spirometry."

83. Under the "Medical Classification" section, the medical examiner determined that Stump required a work restriction of "no negative pressure respirator use."

84. Stump, however, was not restricted from wearing a cartridge-type respirator or a self-contained breathing apparatus ("SCBA").

85. In Bombardier's job description for the Tech A&P position (as known as an A&P Mechanic), which was produced to the EEOC as part of the investigation of Stump's charge, there is no mention of any requirement to wear a respirator to complete

job duties.

86. Bombardier never conducted a validation study for the PFT for the Tech A&P role.

87. WorkWell never conducted a validation study for the PFT for the Tech A&P role.

88. The A&P mechanic position does not expose employees to respiratory hazards requiring the use of a respirator.

89. Bombardier did not evaluate whether another type of respirator could be used by Stump, including a powered air-purifying respirator ("PAPR"), and did not offer Stump an alternative respirator or other means of performing the job.

90. Rather than determine whether Stump could safely perform the job without the particular respirator Bombardier had selected, with another respirator, or through another available means, Bombardier treated Stump's inability to obtain medical clearance for its selected respirator as disqualifying him from employment.

91. After Stump did not pass the PFT, Stump advised staffing agency HSGI that he has pectus excavatum and would need reasonable accommodation because of his disability.

92. HSGI relayed this information to Bombardier.

93. Bombardier approved Stump for a retake of the PFT.

94. On December 3, 2019, Stump retook the PFT and did not pass again.

95. Once again, the medical examiner interpreted Stump's results from the PFT as reflecting "Abnormal Spirometry."

96. On the PFT results, the examiner also stated: "I recommend evaluation by [a] pulmonologist."

97. These results were sent to and reviewed by Bombardier.

98. On or about December 7, 2019, approximately three days before Stump's scheduled start date at its Tucson facility and after Stump and his wife had already moved to Tucson, Bombardier rescinded its job offer to Stump.

99. Bombardier failed to reimburse Stump for his travel expenses as stipulated in the employment contract.

100. To date, Stump has worked as an A&P Mechanic for at least eight competitor aeronautics companies during his 20+ year career.

101. Stump has never been required to take a PFT for any other company prior to or subsequent to his application to work for Bombardier in 2019.

**C. Other Aggrieved Individuals**

102. Beginning no later than November 2019 and continuing through the present, a class of aggrieved individuals like Stump received conditional job offers from Bombardier.

103. Beginning no later than November 2019 and continuing through the present, the class of aggrieved individuals had the requisite skills and qualifications for the positions, as evidenced by the conditional offers from Bombardier.

104. Beginning no later than November 2019 and continuing through the present, Bombardier required the class of aggrieved individuals who received conditional job offers to complete its post-offer screen, which includes the PFT, before they could begin employment.

105. Beginning no later than November 2019 and continuing through the present, WorkWell has communicated with Bombardier regarding the post-offer screen results of job applicants, including the aggrieved individuals.

106. This included communicating the medical history questionnaires, physical examinations, physical testing, and work restrictions of the aggrieved individuals.

107. As a result of the post-offer screen, including communications from WorkWell to Bombardier, Bombardier has learned of the aggrieved individuals' disabilities, history of having disabilities, and/or perceived disabilities.

108. Beginning no later than November 2019 and continuing through the present, Bombardier has withdrawn offers of employment to any applicant like the aggrieved individuals who did not pass the PFT.

109. Beginning no later than November 2019 and continuing through the present, Bombardier did not hire the aggrieved individuals.

110. Beginning no later than November 2019 and continuing through the present, Bombardier has denied employment to the aggrieved individuals because they did not pass the PFT.

111. Beginning no later than November 2019 and continuing through the present, Bombardier did not discuss with the aggrieved individuals whether they needed the reasonable accommodation of alternative testing.

112. Beginning no later than November 2019 and continuing through the present, Bombardier did not discuss with the aggrieved individuals whether they were able to perform the essential functions of their respective positions, with or without reasonable accommodation.

113. Since at least November 2019 and continuing to the present, Bombardier has engaged in unlawful employment practices, including at its Tucson facility, in violation of the ADA.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**Use of Qualification Standards or Other Selection Criteria that Screen Out or Tend to Screen Out Individuals with Disabilities – 42 U.S.C. §§ 12112(a) and (b)(6))**

114. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

115. At all relevant times, Stump and the other aggrieved individuals were individuals with disabilities under 42 U.S.C. § 12102.

116. At all relevant times, Stump and the other aggrieved individuals were qualified and able to perform the essential functions of the positions they were offered at Bombardier, with or without reasonable accommodation.

117. At all relevant times, Bombardier did not hire Stump and the other

aggrieved individuals who did not pass the PFT.

118. At all relevant times, Bombardier's use of the PFT has screened out or tended to screen out Stump and the other aggrieved individuals with disabilities.

119. The effect of the practices complained of in the foregoing paragraphs has been to deprive Stump and a class of qualified aggrieved individuals of equal employment opportunities and otherwise adversely affect their status as applicants for employment because of their disabilities.

120. The effect of the practices complained of in the foregoing paragraphs has been to inflict emotional pain, suffering, and inconvenience upon Stump and other aggrieved individuals and to deprive them of the financial and other benefits of employment with Bombardier.

121. The unlawful employment practices complained of in the foregoing paragraphs were, and are, intentional.

122. The unlawful employment practices complained of in the foregoing paragraphs were, and are, done with malice or with reckless indifference to the federally protected rights of Stump and other aggrieved individuals.

## SECOND CLAIM FOR RELIEF

**Use of Standards, Criteria, or Methods of Administration that Have the Effect of Discrimination on the Basis of Disability – 42 U.S.C. § 12112(a) and (b)(3))**

123. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

124. At all relevant times, Stump and the other aggrieved individuals were individuals with disabilities under 42 U.S.C. § 12102.

125. At all relevant times, Stump and the other aggrieved individuals were qualified and able to perform the essential functions of the positions they were offered at Bombardier, with or without reasonable accommodation.

126. At all relevant times, Bombardier did not hire Stump and the other aggrieved individuals who did not pass the PFT.

127. At all relevant times, Bombardier's use of the PFT has had the effect of discrimination on the basis of disability.

128. The effect of the practices complained of in the foregoing paragraphs has been to deprive Stump and a class of qualified aggrieved individuals of equal employment opportunities and otherwise adversely affect their status as applicants for employment because of their disabilities.

129. The effect of the practices complained of in the foregoing paragraphs has been to inflict emotional pain, suffering, and inconvenience upon Stump and other aggrieved individuals and to deprive them of the financial and other benefits of employment with Bombardier.

130. The unlawful employment practices complained of in the foregoing paragraphs were, and are, intentional.

131. The unlawful employment practices complained of in the foregoing paragraphs were, and are, done with malice or with reckless indifference to the federally protected rights of Stump and other aggrieved individuals.

## THIRD CLAIM FOR RELIEF

**Failure to Hire Because of Disability – 42 U.S.C. § 12112(a)**

132. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

133. At all relevant times, Stump and the other aggrieved individuals were individuals with disabilities under 42 U.S.C. § 12102.

134. At all relevant times, Stump and the other aggrieved individuals were qualified and able, with or without reasonable accommodation, to perform the essential functions of the positions for which they applied.

135. At all relevant times, Bombardier did not hire Stump and the other aggrieved individuals who did not pass the PFT.

136. At all relevant times, Bombardier did not hire Stump and other aggrieved individuals because of their disabilities, records of disability, or perceived disabilities,

and/or because of the need to provide reasonable accommodation, in violation of Section 102(a) of the ADA, 42 U.S.C. § 12112(a).

137. The effect of the practices complained of in the foregoing paragraphs has been to deprive Stump and a class of qualified aggrieved individuals with disabilities of equal employment opportunities and otherwise adversely affect their status as applicants for employment because of their disabilities.

138. The effect of the practices complained of in the foregoing paragraphs has been to inflict emotional pain, suffering, and inconvenience upon Stump and other aggrieved individuals and to deprive them of the financial and other benefits of employment with Bombardier.

139. The unlawful employment practices complained of in the foregoing paragraphs were, and are, intentional.

140. The unlawful employment practices complained of in the foregoing paragraphs were, and are, done with malice or with reckless indifference to the federally protected rights of Stump and other aggrieved individuals.

## FOURTH CLAIM FOR RELIEF

**Failure to Provide Reasonable Accommodation – 42 U.S.C. §§ 12112(a) and (b)(5)(A)**

141. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

142. At all relevant times, Stump and the other aggrieved individuals were individuals with disabilities under 42 U.S.C. § 12102.

143. At all relevant times, Stump and the other aggrieved individuals were qualified and able, with or without reasonable accommodation, to perform the essential functions of the positions for which they applied.

144. At all relevant times, Bombardier did not hire Stump and the other aggrieved individuals who did not pass the PFT.

145. At all relevant times, Bombardier knew or had reason to know of the

disabilities and resulting limitations of Stump and other aggrieved individuals.

146. At all relevant times, Bombardier failed to engage in the interactive process and failed to conduct an individualized assessment of whether Stump and other aggrieved individuals could perform alternate testing or perform the essential functions of the positions with or without reasonable accommodation.

147. At all relevant times, Bombardier refused to provide reasonable accommodations to Stump and other aggrieved individuals.

148. At all relevant times, Bombardier refused to hire Stump and other aggrieved individuals.

149. By refusing to provide reasonable accommodations and refusing to hire these individuals, Bombardier violated Sections 102(a) and 102(b)(5)(A) of Title I of the ADA, 42 U.S.C. §§ 12112(a) and 12112(b)(5)(A).

150. The effect of the practices complained of in the foregoing paragraphs has been to deprive Stump and a class of qualified aggrieved individuals with disabilities of equal employment opportunities and otherwise adversely affect their status as applicants for employment because of their disabilities.

151. The effect of the practices complained of in the foregoing paragraphs has been to inflict emotional pain, suffering, and inconvenience upon Stump and other aggrieved individuals and to deprive them of the financial and other benefits of employment with Bombardier.

152. The unlawful employment practices complained of in the foregoing paragraphs were, and are, intentional.

153. The unlawful employment practices complained of in the foregoing paragraphs were, and are, done with malice or with reckless indifference to the federally protected rights of Stump and other aggrieved individuals.

**PRAYER FOR RELIEF**

Wherefore, the EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Bombardier, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against applicants and employees with disabilities.

B. Order Bombardier to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities and which eradicate the effects of its past and present unlawful employment practices.

C. Order Bombardier to cease using the Pulmonary Function Test as administered, and to revise its post-offer medical screen, its qualification standards, and their administration, to bring them into compliance with the ADA, as amended.

D. Order Bombardier to make whole Stump and other aggrieved individuals by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to instatement or front pay in lieu thereof.

E. Order Bombardier to make whole Steven Stump and other aggrieved individuals by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

F. Order Bombardier to make whole Steven Stump and other aggrieved individuals by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

G. Order Bombardier to pay Steven Stump and other aggrieved individuals punitive damages for its malicious and reckless conduct for the unlawful practices

described above, in amounts to be determined at trial.

H. Grant such further relief as the Court deems necessary and proper in the public interest.

I. Award the EEOC its costs of this action.

**JURY TRIAL DEMAND**

The EEOC requests a jury trial on all questions of fact raised by its complaint.

DATED this 28th day of September, 2026.

RESPECTFULLY SUBMITTED,

CHRISTOPHER LAGE,
Deputy General Counsel
131 M Street, N.E.
Washington, DC 20507

MARY JO O'NEILL
Regional Attorney

LAURIE JAECKEL
Assistant Regional Attorney

*/s/ Paula C. Salazar*
Paula C. Salazar
Trial Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Phoenix District Office
3300 North Central Ave., Suite 690
Phoenix, AZ 85012

Attorneys for Plaintiff EEOC

PLEASE NOTE:
For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorneys. Duplicate service is not required on the General Counsel and Associate General Counsel in Washington, D.C.